UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| vs.                         ) | CR 06-B-0426-NE |
| ) | |
| MICHAEL WAYNE STRICKLIN,    ) | |
| ) | |
| Defendant.                  ) | |

**MEMORANDUM OPINION**

This case is presently pending before the court on defendant's Motions to Suppress. (Docs. 11, 12, 22.) For the reasons set forth below, the court finds that defendant's Motions to Suppress are due to be granted and all evidence of the pistol and Stricklin's statements to police will be excluded.

**STATEMENT OF FACTS**

On May 30, 2003, an unidentified white male approached Decatur Police Officer Joe Renshaw as he was sitting in his patrol car. The unidentified white male told Officer Renshaw that he had seen a white male standing next to a green Toyota pick-up truck in the parking lot of the KFC on Highway 31 in Decatur. He said that the white male had stuffed something into the waistband of his pants and was looking around to see if anyone was watching him. The KFC was 200 to 300 yards from Officer Renshaw's location.

Officer Renshaw and Decatur Police Officer Lyon drove to the KFC and saw a green Toyota pick-up leaving the parking lot. A white male was sitting in the passenger seat, a

white female was driving the truck, and a juvenile white female was sitting between them. Nothing appeared amiss at the KFC.

Officer Renshaw followed the pick-up for some distance before turning on his lights and pulling it over. Nothing in the record indicates that the driver had committed a traffic violation prior to being pulled over. Officer Renshaw testified that he saw something come out the passenger side window when he turned on his lights; however, he did not consider this to be a violation of anti-littering law.

Officer Renshaw approached the pick-up and asked the driver for her driver's license; he also asked the male passenger for identification. The driver's license identified her as Melinda Walker. She also told Officer Renshaw that she was the owner of the pick-up. The passenger said his name was Terry Gentry, and he said he did not have any identification. When the male passenger identified himself, Walker "grimaced."

Officer Renshaw asked Walker who was her passenger, and she told him the male passenger was Michael Stricklin and that he had warrants for his arrest in Decatur. Officer Renshaw then told the driver why he had stopped her and asked for her consent to search the pick-up. Walker consented to the search.

Officer Lyon got Gentry/Stricklin out of the pick-up and frisked him. During the frisk, Officer Lyon found Gentry/Stricklin's wallet, which contained a driver's license identifying the passenger as Michael Wayne Stricklin. Stricklin told Officer Lyon that he had lied about his identity because he knew there was an outstanding warrant for his arrest.

2

Officer Lyon placed Stricklin under arrest at the scene for giving false informatuion to a law enforcement officer.

A search of vehicle revealed a Smith and Wesson .22 caliber pistol under the passenger seat. Stricklin told the officers that the gun belonged to his mother, that she did not know that he had the gun, and that he did not have a permit for the pistol.

Officer Renshaw completed an Alabama Uniform Arrest Report at or near the time of the arrest. Regarding the information from the unidentified citizen, Officer Renshaw wrote:

> On 5-30-03, Officer Lyon and I were approached by unknown citizens who stated that there was a white male standing next to a Toyota pickup truck at the KFC on 31 south. They stated he stuffed *something* in his waist band and was going through a brief case [sic] and then a tool box attached to the bed of the truck. They said he kept looking around as if to make sure no one was watching what he was doing.

(Def. Ex. 1 at 2, Hearing on Motion to Suppress [emphasis added].) On August 16, 2003, over eleven weeks after the stop, Officer Renshaw supplemented the original Report because, according to his testimony in the suppression hearing, he needed to clarify that probable cause existed for the stop. Decatur Police Detective Sergeant Rick Archer testified at the suppression hearing that he asked Officer Renshaw to supplement his Report because "[b]ased on what there was in the report," there was a problem with probable cause. In the supplement, Officer Renshaw wrote, "This report is to clarify probable cause for the stop and search of Michael Strickland [sic] on 5-30-2003." (*Id*. at 4.) He added, "The persons who had advised us of the subject stated that he had tuck[ed] an item in or removed an item from

3

his waist band. they indicated that they believed the subject may have had a **weapon** and was going to commit a robbery." (*Id*. at 4 [emphasis added].)

A few days after Officer Renshaw supplemented the Report, on August 22, 2003, Decatur Police Detective Sergeant Rick Archer arrested Stricklin on the charge of being a felon in possession of a firearm.  At the police station, Stricklin was advised of his rights before questioning.  Stricklin stated that he understood his rights and signed a written *Miranda* waiver form before making a statement.

In his statement, Stricklin admitted that he was a convicted felon and that he had possession of the pistol on May 30, 2003, when arrested.

## DISCUSSION

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend. IV.  This protection "extends to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002)(citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  The Fourth Amendment's protections are satisfied if the police officer conducting the brief investigatory stop has "an objectively **reasonable suspicion** that 'criminal activity may be afoot.'" *United States v. Heard*, 367 F.3d 1275, 1278 (11th Cir.)(quoting *United States v. Dunn*, 345 F.3d 1285, 1289 (11th Cir. 2003), *cert. denied* 542 U.S. 906 (2004)(quoting *Terry*, 392 U.S. at 30)), *cert.*

4

*denied* 543 U.S. 913 (2004)(emphasis in *Heard*). "The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search." *Florida v. J.L.*, 529 U.S. 266, 271 (2000). The court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

"[T]here are situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *J.L.*, 529 U.S. at 270 (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)). "The reasonable suspicion . . . at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id*. at 272.

In this case, the tip indicated that a white male was acting suspiciously in the KFC parking lot. The court finds that Officer Renshaw's statement that he and Officer Lyons were told that the white male may have a weapon is not credible. Officer Renshaw's initial Report makes no mention of a weapon and the supplement was made months after the incident and only after Renshaw was told that the original Report was inadequate. Even if the Officers had been told that the unidentified man may have had a weapon, this information does not support a finding of reasonable suspicion under the circumstances.

When officers arrived – within moments of receiving the tip – the pick-up was leaving the parking lot. Any inference of suspected illegal activity could not be corroborated at this

5

time. The officers did not observe any suspicious activity in the parking lot and did not receive any calls indicating actual criminal activity had taken place at the KFC.

The court finds that the anonymous tip – although received face-to-face[1] – was not sufficient to support the investigative stop of the pick-up because it did not assert any facts sufficient to "show the tipster [had] knowledge of concealed criminal activity." *See J.L.*, 529 U.S. at 271-72. The court finds that the stop of the pick-up truck in which defendant was a passenger was not supported by reasonable suspicion.

The Government contends, "The defendant . . . lack[s] standing to challenge the consensual search of the vehicle. The driver, Melinda Walker, owned the vehicle and provided the consent to the search of the vehicle." (Doc. 23 at 3.) The court agrees that, absent unusual circumstances, a passenger in a vehicle does not have standing to challenge ***directly*** the search of that vehicle. *See United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998)("A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents, regardless of whether the driver owns or rents it." (citing *Rakas v. Illinois*, 439 U.S. 128, 130, 140, 148-49 (1978); *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1162 (10th Cir. 1995))). However, "passenger standing to directly challenge a vehicle

---

[1] "A face-to-face anonymous tip is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the demeanor and perceived credibility of the informant." *Heard*, 367 F.3d at 1279 (citing *United States. v. Valentine*, 232 F.3d 350, 354 (3d Cir. 2000); *United States. v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000); *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978).

6

search" is distinguishable from "passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop, detention, or arrest." *Eylicio-Montoya*, 70 F.3d at 1162. "A passenger does not relinquish [his] Fourth Amendment interest in protecting [himself] from unlawful seizures merely because [he] chooses to ride in a vehicle in which [he] has no possessory or proprietary interest." *Id*. at 1164.[2] The court finds that Stricklin has standing to seek suppression of the pistol found in Walker's truck

---

[2]In *Eylicio-Montoya*, the Tenth Circuit, quoted *Search and Seizure: A Treatise on the Fourth Amendment*, which states:

> Does [*Rakas v. Illinois*, 439 U.S. 128 (1978)] mean that persons who are "merely passengers" (i.e., asserting neither a property nor a possessory interest in the vehicle, nor an interest in the property seized) will never have standing? Although Justice Rehnquist's opinion unfortunately does not even hint at a stopping point short of such an absolute rule, thus prompting some courts to give *Rakas* such an interpretation, it does not seem that *Rakas* goes this far. For one thing, it is important to note, as the concurring opinion in *Rakas* takes great pains to emphasize, that the "petitioners do not challenge the constitutionality of the police action in stopping the automobile in which they were riding; nor do they complain of being made to get out of the vehicle," so that the question before the Court was "a narrow one: Did the search of their friend's automobile after they had left it violate any Fourth Amendment right of the petitioners?" This would indicate, as two-thirds of the Court (the two concurring justices and the four dissenters) recognize, that a passenger does have standing to object to police conduct which intrudes upon his Fourth Amendment protection against unreasonable seizure of his person. ***If either the stopping of the car or the passenger's removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit***.

*Eylicio-Montoya*, 70 F.3d at 1163 (quoting Wayne R. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT, § 11.3(e), at 324-25 (2d ed. 1987)),

7

based on the illegal stop.[3] *See id.*; *see also United States v. Mosley*, 454 F.3d 249, 253 (3d Cir. 2006)("This case is about an illegal seizure by the police of the defendant, pursuant to which evidence was discovered.  The violation of Mosley's Fourth Amendment rights was the traffic stop itself, and it is settled law that a traffic stop is a seizure of everyone in the stopped vehicle. Thus passengers in an illegally stopped vehicle have 'standing' to object to the stop, and may seek to suppress the evidentiary fruits of that illegal seizure . . . .")(internal citations and footnotes omitted); *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000)("As a passenger, Twilley has no reasonable expectation of privacy in a car that would permit his Fourth Amendment challenge to a search of the car.  But Twilley challenged the initial stop, and a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle.")(internal citations and quotations omitted); *United States v. Kimball*, 25 F.3d 1, 5 (1st Cir. 1994)(Passenger in a vehicle has standing to challenge illegal stop of a vehicle in which he has no interest because, "The interest in freedom of movement and the interest in being free from fear and surprise are personal to all occupants of the vehicle, and an individual's interest is not diminished

---

[3]Neither the Supreme Court nor this Circuit has explicitly held "that a passenger has standing to challenge the initial ***stop*** of a vehicle even if he cannot independently challenge its ***search***, for his own liberty interests are implicated by an unlawful stop." *United States v. Wehrle*, No. CR406-333, 2007 WL 521882, *2 (S.D. Ga. Feb. 14, 2007)(citations omitted); *see also United States v. Moore*, No. No. 2:06-cr-8-FtM-29SPC, 2006 WL 1232811, *1 (M.D. Fla. May 5, 2006).

8

simply because he is a passenger as opposed to the driver when the stop occurred."); *United States v. Cornelius*, No. 2:06-CR-12-MEF, 2006 WL 2480029, *3 (M.D. Ala. Aug. 25, 2006) ("However, to the extent that defendant alleges that the Georgia traffic stop and his subsequent detention were unlawful, he does have standing. A passenger in a vehicle generally has standing to challenge the legality of the initial stop and detention.")(citations omitted).

The court also finds that the Government has failed to produce sufficient evidence to show that Walker's consent cured the taint of the illegal stop. The Eleventh Circuit has held:

> As a general rule, the evidence gathered as a result of an unconstitutional stop must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 484-85, 83 S. Ct. 407, 416, 9 L. Ed. 2d 441 (1963). However, a defendant's consent to a search may cure the constitutional taint on evidence obtained by violating a defendant's Fourth Amendment rights. *Id*. at 486, 83 S. Ct. at 416-17. In this case, to cure the taint on the drug evidence obtained after the illegal traffic stop, the government would have to prove (1) that Chanthasouxat's consent to the search was voluntary, [*United States v.*] *Santa*, 236 F.3d [662,] 676 [(11th Cir. 2000)], and (2) that his consent was obtained "by means sufficiently distinguishable [from the illegal stop] to be purged of the primary taint." *Id*. at 677 (internal quotations omitted). "[T]he second requirement focuses on causation . . . ." *Id*. at 676. We consider three factors in determining whether a voluntary consent was obtained by exploitation of an illegal seizure: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct. *Id*. at 677 (citing *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261, 45 L. Ed. 2d 416 (1975)); *United States v. Valdez*, 931 F.2d 1448, 1452 (11th Cir. 1991).

*United States v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003).

For purposes of deciding Stricklin's Motions to Suppress, the court assumes that Walker's consent to the search of her pick-up was voluntary. However, the court finds that

9

the consent was the result of, and not distinguishable from, the illegal stop. Therefore, the evidence of the pistol and Stricklin's statement at the scene will be suppressed.

The next issue is whether Stricklin's August 2003 statement to Detective Archer is due to be suppressed as "fruit" of the unlawful stop. "The exclusionary rule, which bars the admission of evidence obtained in violation of the Constitution, extends beyond the direct products of police misconduct to evidence derived from the illegal conduct or "fruit of the poisonous tree." *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112 (11th Cir. 1990)(quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). To determine whether evidence is due to be excluded, the court must decide, "whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id*. (quoting *Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963)(quoting R. Maguire, EVIDENCE OF GUILT 221 (1959))).

The court finds that Stricklin's statement was made knowingly and voluntarily after receiving proper *Miranda* warnings. However, "the fact that [a] confession may be 'voluntary' for purposes of the Fifth Amendment, in the sense that *Miranda* warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest." *Taylor v. Alabama*, 457 U.S. 687, 690 (1982). The Supreme Court has held:

> In this situation, a finding of "voluntariness" for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis. See *Dunaway v. New York*, [442 U.S. 200,] 217 [(1979)]. The reason for this approach is clear: "[t]he exclusionary rule, . . . when utilized

10

> to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth" Amendment. *Brown v. Illinois*, 422 U.S. [590,] 601 [(1975)]. If *Miranda* warnings were viewed as a talisman that cured all Fourth Amendment violations, then the constitutional guarantee against unlawful searches and seizures would be reduced to a mere "'form of words.'" *Id.*, at 603 . . . (quoting *Mapp v. Ohio*, 367 U.S. 643, 648 . . . (1961)).

*Id.* To determine whether a confession has been purged of the taint of the illegal arrest, the court considers three factors: (1) temporal proximity, (2) presence of intervening circumstances, and (3) purpose and flagrancy of official misconduct. *Id.*

The court notes that Detective Archer arrested Stricklin for being a felon in possession of a firearm based on Stricklin's possession of the pistol discovered during the illegal stop. Because the court holds that evidence of the gun is due to be suppressed, the arrest was without probable cause and, therefore, illegal. Stricklin gave his statement shortly after being arrested and the record contains no evidence of any intervening circumstances sufficient to distinguish his confession from his illegal arrest. The court finds the misconduct was not particularly flagrant. Nevertheless, the court finds that the causal connection between the illegal stop and subsequent illegal arrest and Stricklin's statements was not broken.

Therefore, the court finds that Stricklin's statements at the scene and to Detective Archer are due to be suppressed.

For the foregoing reasons, the court is of the opinion that evidence of the .22 pistol and Stricklin's statements are due to be excluded. An Order granting defendant's Motions to Suppress, (docs. 11, 12, and 22), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 8th day of May, 2007.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE